IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | :  Case No: 1:22-cr-00339-1 (RDM) |
| | : |
| ERIC CRAMER, | : |
| | : |
| Defendant. | : |
| | : |

**SENTENCING MEMORANDUM**
**ON BEHALF OF ERIC CRAMER**

  Defendant Eric Cramer, through counsel, Aaron D. Moss, Assistant Federal Public Defender, files this Sentencing Memorandum, which endeavors to highlight the mitigating factors in his case to assist this Honorable Court in its "overarching duty under § 3553(a) to impose a sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(a)(2)." *Pepper v. United States*, 562 U.S. 476 (2011) (internal quotations omitted). Pursuant to the advisory United States Sentencing Guidelines ("Guidelines") calculated in the Presentence Report ("PSR"), Mr. Cramer faces a recommended range of eight (8) to twelve (12) months imprisonment. PSR ¶ 82. Based on the applicable factors found in 18 U.S.C. § 3553(a), he respectfully requests that the Court impose a sentence below the low-end of those Guidelines.

**I. INTRODUCTION**

  Eric Cramer is a forty-three (43) year old father and husband. *Id*. ¶¶ 51, 55, 57. He owns a handyman service, which operates in Virginia and West Virginia. *Id*. ¶ 70. He has a criminal history category of I based on zero (0) criminal history points. *Id*. ¶ 44. On January 6, 2021, he traveled with his brother, Country Cramer, to Washington, DC. The stated purpose of the trip "was to support some members of Congress who were attempted to contest some states' certification of the Electoral College." *Id*. ¶ 20.

1

On July 1, 2022, the government filed a criminal complaint charging Mr. Cramer with four (4) misdemeanor offenses related to his conduct on January 6, 2021. On or about July 8, 2022, Mr. Cramer was arrested in Romney, West Virginia. He appeared before United States Magistrate Judge Robert W. Trumble in Northern District of West Virginia and was released on a personal recognizance bond. On July 14, 2022, he appeared before United Stats Magistrate Judge G. Michael Harvey by VTC in the District of Columbia and was released back onto a personal recognizance bond.

October 14, 2022, the government filed a four count Information charging Mr. Cramer with the same four (4) misdemeanors offenses for his conduct on January 6, 2021. *See id*. ¶ 1. On October 25, 2022, Mr. Cramer pleaded guilty to Count Two of the Information, which charged Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2). *Id*. ¶ 4. Pursuant to USSG § 2A2.4(a), the base offense level for the offense is ten (10). *Id*. ¶ 32. Because Mr. Cramer grabbed an officer's baton on January 6, 2021, the offense level is subjected to a three (3) level increase under USSG § 2A2.4(b)(1)(A). *Id*. ¶ 33. Notably, the baton does not appear to be the same baton that Mr. Cramer posted about on social media. The PSR, then, applies a two (2) level downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a). This results in a total offense level of eleven (11). With a total offense level of eleven (11) and a criminal history category of I based on zero (0) criminal history points, the advisory Guidelines recommended a sentence of imprisonment for Mr. Cramer in the range of eight (8) to twelve (12) months. *Id*. ¶ 82. Mr. Cramer's sentencing is scheduled for February 23, 2023. Throughout the case, he has remained compliant with all conditions of his personal recognizance bond.

## II. DISCUSSION

By admitting his culpability and pleading guilty, Mr. Cramer has demonstrated that he accepts responsibility for his offense conduct on January 6, 2021. While he understands that he cannot change his past misconduct, he knows that he can overcome those mistakes to make a positive difference for his future and the future of his family. During the one (1) year and nine (9) months between his involvement in the January 6, 2021 Capitol Riot and the October 6, 2022 Information filed against him, Mr. Cramer did not commit any similar misconduct. And although he recognizes that he likely will face a period of incarceration for his conduct on January 6, 2021, his prior history and post-offense conduct support the conclusion that a sentence below the Guidelines, to include a term of probation, is "sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." 18 U.S.C. § 3553(a). As set forth in 18 U.S.C. § 3553(a)(2), a minimally sufficient sentence needs:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or correctional treatment in the most effective manner.

**A.    Just punishment to reflect the seriousness of the offense and respect for law.**

*First*, a sentence below the Guidelines is sufficient for purposes of just punishment to reflect the seriousness of the offense and promote respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A). By-in-large, the facts of Mr. Cramer's offense are not contested. Foremost, those facts that form the nature and circumstances of his offense conduct, *see* 18 U.S.C. § 3553(a)(1), do not indicate that he came to Washington, D.C., with the intent to overthrow democracy. Here, it must be noted that Mr. Cramer has no affiliation with the Oath Keepers, the Proud Boys, or any other extremist organization that conspired to disrupt Congress's certification of the 2020 Electoral

3

College vote count and threaten the peaceful transfer of power after the 2020 Presidential election. Furthermore, although he entered the Capitol building, Mr. Cramer does not appear to have entered any office. Nor did he remain in the Capitol building for an extended period; but instead, left the building within a matter of minutes and upon locating his brother, Country Cramer.

Mr. Cramer regrets the events of January 6, 2021. Accordingly, he accepted responsibility for his conduct and entered into a guilty plea in a timely manner. He did not make the government expend additional resources in preparation for trial. Mr. Cramer respects the law. He has a criminal history category of I based on zero (0) criminal history points to show for it. PSR ¶ 44. The collateral consequences that flow from the conviction in this case, alone, add plenty to retribution. The fact of the matter is that Mr. Cramer will face a life-long stigma for his conduct at the Capitol on January 6, 2021. Given the greater context of this case, the purposes of just punishment are not served by a Guidelines sentence. Instead, a sentence below the Guidelines is sufficient but not greater than necessary to meet the goals of 18 U.S.C. § 3553(a)(2).

**B.     Adequate deterrence and protection of the public.**

***Second***, sentencing Mr. Cramer below the Guidelines also appears sufficient to achieve the goals of general and specific deterrence to future criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B)-(C). As a general matter, "[e]mpirical studies have shown that longer sentences have minimal or no benefit on whether offenders or potential offenders commit crimes." Brennan Center for Justice, *What Caused the Crime Decline?* 26 (Feb. 2015), *available at* https://www.brennancenter.org/publication/what-caused-crime-decline (last visited Feb. 2, 2023). As to specific deterrence, "there is little evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such as probation. Instead, the evidence suggests that reoffending is either unaffected or increased." Daniel

S. Nagin, *Deterrence in the Twenty-First Century*, 42 CRIME & JUST. 199, 201 (Aug. 2013), *available at* https://www.jstor.org/stable/10.1086/670398 (last visited Feb. 2, 2023).

Indeed, in its own study of over 15,000 offenders, the United States Sentencing Commission found that those with a criminal history category I have a 12.7% recidivism rate when provided probation versus 14.8% recidivism rate when sentenced to prison. *See* United States Sentencing Commission, *Recidivism: Criminal History Computation of the Federal Sentencing Guidelines*, at Ex. 12 (2004), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (last visited Feb. 2, 2023). The Commission's findings are important to Mr. Cramer's case. Given his criminal history category of I based on zero (0) criminal history points, PSR ¶ 44, the data suggests that the goals of deterrence are more readily achieved through a noncustodial sentence than prison.

Mr. Cramer's post-offense efforts and success on pretrial release suggest a sincere desire to reform his behavior without the need for imprisonment. *See United States v. Robertson*, 662 F.3d 871 (7th Cir. 2011) ("[d]emonstrated self-motivated rehabilitation is direct and relevant evidence of 'the need for the sentence imposed' . . . to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant"); *United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (exemplary behavior on pretrial release shows unlikelihood of reoffending). Mr. Cramer did not attempt any similar criminal conduct for the one (1) year and nine (9) months between the commission of the instant offense and the filing of the Information. Instead, he "work[ed] approximately [eighty] 80 hours a week." PSR ¶ 70. He took care of his minor daughter. *Id.* ¶ 80. He was there for his adult children. *See* Larissa Cramer, *Character Letter*, (Feb. 16, 2023), attached as Ex. 1; *see also* Emily Cramer, *Character Letter*, attached as Ex. 2. He contributed to his community. *See* Marvin Cramer, *Character Letter*, attached as Ex. 3.

For purposes of general and specific deterrence, Mr. Cramer further points to findings from the National Institute of Justice, which is a program of the United States Department of Justice ("DOJ"), to support imposing a sentence below the Guidelines:

> Sending an individual convicted of a crime to prison isn't a very effective way to deter crime. Prisons are good for punishing criminals and keeping them off the street, but prison sentences (particularly long sentences) are unlikely to deter future crimes. Prisons actually may have the opposite effect. Inmates learn more effective crime strategies from each other, and time spent in prison may desensitize many to the threat of future imprisonment.

National Institute of Justice, *Five Things About Deterrence* (May 2016), *available at* http://www.nij.gov/five-things/pages/deterrence.aspx (last visited Feb. 2, 2023). To be certain, in this case both the Commission and the DOJ appear to agree that a sentence of imprisonment may risk more harm than good to the goals of 18 U.S.C. § 3553(a)(2)(B)-(C). The longer the sentence, the longer Mr. Cramer's exposure to more serious offenders who may do more to increase his risk of recidivism and danger to the public than to mitigate against it.

C.   **Effective rehabilitation.**

***Third***, a sentence below the low end of the Guidelines also makes for the most effective means to meet the goals of 18 U.S.C. § 3553(a)(2)(D), which include providing "needed educational or vocational training, medical care, or correctional treatment in the most effective manner." Statute recognizes that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Instead, these services are most effectively provided in the community. Mr. Cramer's medical history is before the Court. *See* PSR ¶ 62. He has conditions that require medications. *Id*. Management of those conditions and medications currently is provided in the community through Mr. Cramer's general practitioner. *Id*. ¶ 63. A sentence below the Guidelines will minimize any disruptions to that medical care and ensure it continues.

On the other hand, past audits from the Office of the Inspector General have found that the BOP often does not provide "required medical services to inmates" within its custody and care. *See* U.S. Dep't of Justice, Office of the Inspector General, Audit Division, *The Federal Bureau of Prisons' Efforts to Manage Health Care* 32, 34 (2008), *available at* http://www.justice.gov/oig/reports/BOP/a0808/final.pdf (last visited January 24, 2023). Those audits may present a real problem for Mr. Cramer because of medical conditions and age. With no guarantee that the BOP will care for him, there can be no finding that a sentence within his Guidelines meets the mandate of 18 U.S.C. § 3553(a)(2)(D). A below Guidelines sentence is far more measured and effective to achieve all those statutory purposes of rehabilitation in the manner anticipated by sentencing statute.

**D.     The sentences available and need to avoid unwarranted disparity.**

In determining an appropriate sentence, § 3553(a)(3) directs the Court to consider all "the kinds of sentences available." Among available sentences, § 3553(a)(4) directs consideration into the sentencing range produced by the Guidelines. Here, both subsections of the sentencing statute authorize alternatives to imprisonment. For Mr. Cramer's offense of conviction, *see* 18 U.S.C. § 1752(a)(2), Congress set the statutory range of imprisonment at zero (0) to one (1) year. PSR ¶ 81. Congress has also authorized up to five (5) years of probation pursuant to 18 U.S.C. § 3561(c)(2). *Id*. ¶ 97. Under the Guidelines, Mr. Cramer's range falls into Zone B of the Sentencing Table, which allows the Court to impose "probation with a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention." *Id*. ¶ 99.

Incidentally, a five (5) year term of probation represents the longest criminal justice sentence available to the Court. Given the conditions available, a sentence of probation makes for a "substantial restriction of freedom." *See Gall v. United States*, 552 U.S. 38, 48 (2007). Conditions

like community confinement or home detention may be imposed. The condition of "intermittent confinement" may also be imposed. *See* 18 U.S.C. § 3563(b)(10); *see also* USSG § 5F1.8. For Mr. Cramer this would mean "remaining in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time;" USSG § 5F1.8, comment. (n.1), while still being allowed to continue medical treatment and employment in a community setting. Numerous other conditions will attach. *See* PSR ¶¶ 100-101. A condition of community service should be considered.

All the conditions contemplated in this case are "reasonably related to the sentencing factors set forth in [§ 3553(a)]," but which, "involve no greater deprivation of liberty tha[n] is reasonably necessary for the purposes set forth in [§ 3553(a)(2)]." PSR ¶ 100. Such sentencing options should not be taken lightly and need to factor into the Court's sentencing calculus. They do not undermine the law; but instead, are contemplated by it. They will minimize Mr. Cramer's risk of recidivism and maximize the public's safety. All the while, they will ensure that he continues to receive medical treatment in the community, maintains his employment, provides for his family, and remains away from those people who would pose a bad influence on him.

Finally, a review of other misdemeanor sentences imposed upon people with similar or more serious offense conduct on January 6, 2021, supports imposition of a below guideline sentence in Mr. Cramer's case. *See* 18 U.S.C. § 3553(a)(6). With the forgoing in mind, Mr. Cramer respectfully directs the Court's attention to cases like that of: **Treniss Evans III**, 1:21-CR-00225 (DLF), received a sentence of thirty-six (36) months' probation with a condition of twenty (20) days intermittent confinement with a $5,000 fine and $500 restitution. Pertinent facts in Mr. Evans's case include that he entered the Capitol building, used a megaphone to encourage others to enter the Capitol building, entered a Congressional conference room and drank Fireball whiskey, remained in the Capitol building for approximately twenty (20) minutes.

***Blake Reed***, 1:21-CR-00204 (BAH), received a sentence of thirty-six (36) months' probation with conditions of forty-two (42) days intermittent confinement, and three (3) months home detention with $2,500 fine and $500 restitution. Pertinent facts in Mr. Reed's case include that prior to January 6, 2021, he posted on social media that he was "feeling pissed off" and that "you will see the Republic side of this country go into anarchy stronger than 1776 . . . The Republic Rebellion is coming soon!" Additional pertinent facts include that he wore protective gear like ski goggles and a respirator mask, entered the Capitol building, remained in the Capitol building for approximately twenty-four (24) minutes, took steps to conceal evidence of his participation in the events at the Capitol, and had affiliation with the Proud Boys (co-defendant Bledsoe).

***Robert Schornak***, 1:21-CR-00278 (BAH), received a sentence of thirty-six (36) months' probation with the condition of twenty-eight (28) days intermittent confinement, and two (2) months home detention with $500 restitution. Pertinent facts in Mr. Schornak's case include that prior to January 6, 2021, he stated the following: "We're obviously going next week, we can't stay home n watch our republic be stolen. They want a fight let's have it" and "I'm going to DC on the 6th and I don't expect it to be peaceful." Additional pertinent facts include that he wore protective gear like a military-style tactical vest and helmet, entered the Capitol building, remained in the Capitol building for over ten (10) minutes, and stole an American flag from the Capitol building.

***Felipe Marquez***, 1:21-CR-00136 (RC), received a sentence of eighteen (18) months' probation with the condition of three (3) months' home detention and $500 restitution. Pertinent facts in Mr. Marquez's case include that he unlawfully entered the Capitol during the riot, entered the private office of Senator Merkley and sat at the conference table with other rioters, entered the area inside the Capitol known as the Crypt, and downplayed the fact that property damage occurred.

### III. CONCLUSION

Those who know Mr. Cramer best, know him to be peaceful, law abiding, passionate, and helpful to a fault. *See* Donna Thompson, *Character Letter*, attached as Ex. 4; *see also* Tommy Shingleton, *Character Letter*, attached as Ex. 5; Jackie Haines, *Character Letter*, (Feb. 16, 2023), attached as Ex. 6; James Moreland, *Character Letter*, (Feb. 16, 2023), attached as Ex. 7; Mike Landis, *Character Letter*, (Feb. 16, 2023), attached as Ex. 8; Des'ree Guthrie, *Character Letter*, (Feb. 17, 2023), attached as Ex. 9; Denise Miller, *Character Letter*, (Feb. 19, 2023), attached as Ex. 10; Casey Haines, *Character Letter*, (Feb. 20, 2023), attached as Ex. 11. Mr. Cramer's community needs him and they are moving this Court for leniency. Leniency, in the form of a below Guideline's sentence like probation, best provides the Court with the tools, and Mr. Cramer with the incentive, to achieve all the factors and goals of sentencing. The Court's ability to impose probation for a lengthy period of five (5) years and to incarcerate Mr. Cramer should he violate the conditions of that probationary term provide these tools and incentives in abundance.

Respectfully submitted,

**ERIC CRAMER,**
by counsel,

/s/*Aaron D. Moss*
Aaron D. Moss (WV Bar # 12789)
Federal Public Defender Office
651 Foxcroft Avenue, Suite 202
Martinsburg, West Virginia 25401
Tel. (304) 260-9421
Fax. (304) 260-3716
E-Mail. Aaron_Moss@fd.org

**CERTIFICATION OF SERVICE**

I hereby certify that on February 20, 2023, I electronically filed the forgoing, ***Sentencing Memorandum on Behalf of Eric Cramer***, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Andrew J. Tessman, AUSA<br>
Office of the United States Attorney<br>
300 Virginia Street East<br>
Charleston, WV 25301

*/s/Aaron D. Moss*
Aaron D. Moss (WV Bar #12789)
Federal Public Defender Office
651 Foxcroft Avenue, Suite 202
Martinsburg, West Virginia 25401
Tel. (304) 260-9421
E-Mail: Aaron_Moss@fd.org